———— NEUMANN, Plaintiff, *v.* ———— REISS and Others, Defendants.

Supreme Court, New York County, July 2, 1930. On rehearing July 28, 1930.

*Morris Permut*, for the plaintiff.

*Murray, Aldrich & Webb* [*William Dean Embree* and *Arthur John O' Keefe* of counsel], for Vereinsbank in Hamburg.

VALENTE, J.   This motion is made by the Vereinsbank in Hamburg, a German banking corporation, to vacate three levies under a warrant of attachment.   The action itself was instituted by the plaintiff against defendants, a German copartnership, to recover the sum of $4,896.75 arising from an alleged breach of contract. Plaintiff's claim is that it purchased and paid for certain merchandise, known as dry lime cattle splits, from samples which contained eighty per cent of gluten matter, whereas the goods on arrival contained approximately twenty-five per cent of such matter.   The plaintiff attached a subsequent shipment of eighty-three bales of glue stock shipped by the defendant firm to New York from Hamburg aboard the steamship *Singapore Maru.*   The goods were consigned to the order of the International Trust Company of New York and the freight prepaid.   This institution was the banking agent of plaintiff, and had issued a letter of credit in favor of the defendants.   The latter drew a draft for $2,801.43 upon the International Trust Company and delivered or negotiated the draft to the Vereinsbank, the moving party, which forwarded the draft, together with the bill of lading, to the Equitable Trust Company for collection.   The latter, prior to the arrival of the merchandise, sent the draft, with the documents, to the International Trust Company, which refused payment on the ground that the draft had not been drawn in accordance with the terms of the letter of credit.   The goods arrived in port on April 17, 1930, at Pier A, Erie Basin, and were unloaded by the Columbia Stevedoring Company, which performs the service under private contract with and on behalf of the owners of the vessel.   While in the possession of the stevedores, a warrant of attachment was served upon that company.   No one appearing to claim the goods, they were seized by the United States Collector of Customs and placed in general order storage in a government bonded warehouse

belonging to Butler's Warehouses, Inc. A copy of the warrant of attachment was also left with Butler's Warehouses, and a subsequent copy served upon the Equitable Trust Company, as a result of which the documents were impounded.

The moving party contends that the levies are invalid because contrary to the prohibition contained in section 210 of the Personal Property Law (as added by Laws of 1911, chap. 248) and section 103 of the Transportation Act of the United States (U. S. Code, tit. 49, § 103 [49 U. S. C. A. § 103]). The former section reads as follows: " § 210. Attachment or levy upon goods for which a negotiable bill has been issued. If goods are delivered to a carrier by the owner or by a person whose act in conveying the title to them to a purchaser for value in good faith would bind the owner and a negotiable bill is issued for them, they cannot thereafter, while in the possession of the carrier, be attached by garnishment or otherwise, or be levied upon under an execution, unless the bill be first surrendered to the carrier or its negotiation enjoined. The carrier shall in no such case be compelled to deliver the actual possession of the goods until the bill is surrendered to him or impounded by the court." Section 103 of the Transportation Act (U. S. Code, tit. 49, § 103 [49 U. S. C. A. § 103]) uses substantially the identical language. The purpose of this legislation, which is a part of the Uniform Bills of Lading Act, is " to protect goods in transit and in possession of a carrier against seizure until the carrier should be first liberated from liability and attack by the surrender of the order bill. The Legislature has made the bill the *res* rather than the goods." (*Brimberg* v. *Hartenfeld Bag Co.*, 89 N. J. Eq. 425, 429; 105 A. 68, 69.)

While the goods were in the custody of the Columbia Stevedoring Company, they were in the legal possession of the carrier, and section 210 had to be complied with to sustain an attachment. But the moving party goes further and quotes an official of the bonded warehouse to the effect that possession by the warehouse to which the collector of customs delivered the merchandise after seizure was the same as possession of the steamship company whose vessel brought the goods into port. This seems to be contrary to both the law and the facts. Paragraph 9 of the bill of lading reads: " The period after which the liability of the shipowner for the goods shipped on this Bill of Lading expires, and the manner in which the shipowner is to be notified in the case of damage are fixed by the regulations given on the face of Bill of Lading. * * * Goods to be taken from the ship by the consignees directly they come to land in discharging the ship, and the carriers' responsibility to cease package by package immediately

the goods leave the ship's deck or tackle. If not taken from alongside by the consignees they will be landed and deposited at the expense of the consignee and at his risk of fire, loss or injury, on the dock, or in the warehouse, or in craft, the collector of the port being hereby authorized to grant a general order for the discharge immediately after the entry of the ship." The bill of lading thus fixed definite circumstances after arrival when the carrier's liability should cease. Whether after delivery to a warehouse of its choosing, because of the failure of the consignee to claim the goods, the carrier might still be deemed in constructive possession, need not be considered. The fact is that here the collector seized the goods and placed them in a bonded warehouse. In making the seizure he did not act as the agent of the carrier, but in the exercise of his public duties. He deposited the goods for safekeeping in a bonded warehouse, proceeding under the authority of the Federal statute (U. S. Code, tit. 19, § 362 [19 U. S. C. A. § 362]), which provides that " whenever entry of any imported merchandise is not made within the time provided by law * * * or whenever, in the opinion of the collector, entry of such merchandise cannot be made for want of proper documents or other cause * * * he shall take the merchandise into his custody and send it to a bonded warehouse or public store, to be held at the risk and expense of the consignee until entry is made or completed and the proper documents are procured, or a bond given for their production." It follows, therefore, that, when the goods were seized by the collector, they passed out of the possession, both actual and constructive, of the carrier, whose responsibility both under the law and the conditions of the bill of lading, for further safekeeping, ceased. The levy upon the merchandise in Butler's Warehouse was not a levy upon goods " in the possession of the carrier," against which a negotiable bill of lading was issued. Neither section 210 of the Personal Property Law, nor section 103 of the Transportation Act (U. S. Code, tit. 49, § 103 [49 U. S. C. A. § 103]), under which the motion is made, has any application.

It is probable that there might have been a basis for the motion in section 120 of the Personal Property Law, which is similar to the language in section 210, except that it extends broadly to all bailees who hold goods for which a negotiable document of title has been issued. But, even so, the impounding of the documents has made this section inapplicable as well. The effect of impounding, as applicable to the situation here, is to preserve a possible claim of the third party claimant and to enable it, if it chooses, to assert its claim under sections 924 et seq. of the Civil Practice

Act. If, on the other hand, the impounding, or the attempt to do so, of the documents, shows on the face of such document title to the third party, then the whole levy is ineffective, as in *Pastene & Co.* v. *Irving National Bank* (249 N. Y. 272). In that case the drafts and the bills of lading were both indorsed. The court said, at page 275 of 249 New York: "The indorsements on the drafts and the bill of lading considered alone, strongly imply, if indeed they do not conclusively prove, that the Greek bank was the owner of these documents. The drawer of the drafts indorsed them and the bill of lading to the Banque D'Economie 'for value received,' and that bank, indorsing them for collection, sent them with the invoice to its New York correspondent with instructions to 'credit *us*' with a London bank. Such proof, by itself, raises a presumption of ownership by the bank rather than by the consignor." Here, however, the bill of lading was to the order of the International Trust Company which was never the holder of the bill of lading and which in fact refused to comply with the condition which would authorize it to receive it. Accepting the affidavit on behalf of the moving party at its face value, the bill of lading was delivered by the consignor to the Vereinsbank in connection with a draft upon the consignee. There was no indorsement by the person to whose order the goods were deliverable, pursuant to section 215 of the Personal Property Law (as added by Laws of 1911, chap. 248). The Vereinsbank was only a transferee either under section 219 or 220 of the Personal Property Law (as added by Laws of 1911, chap. 248), and therefore, presumptively, that bank or its agent, the Equitable Trust Company, only held the bill subject to the terms of any agreement with the transferor, the defendant firm. The situation thus presented is not analogous to the one in the *Pastene Case (supra)*, where both the drafts and the bills of lading were indorsed by the party to whom the goods were deliverable. If the consignors had made the bill of lading to their own order and indorsed and delivered it to Vereinsbank, as whose agent the Equitable Trust Company was holding it, presumptive or perhaps conclusive title in the moving party would have been established, the documents might have been proof against summary attachment, and an analogy with the *Pastene* case presented. But this was not done, and the burden of proving ownership is, therefore, upon the moving party — a burden which it has not sustained.

The motion to vacate the levy is denied.

## ON REARGUMENT

I have carefully considered the facts in the case upon reargument. The moving party has presented proof that the statement

that the documents were impounded was inaccurate. Granting this, the proof, however, shows that the bill of lading was not negotiable in fact, the bank to whose order the goods were deliverable having refused to receive the documents. They are, therefore, in the hands of the moving party's agent. In fact, it is alleged that they have been sent back to the Hamburg Bank, the interest of which, derived from the consignor, is practically that of assignee. The effect is virtually as if an injunction had been issued to prevent further negotiation of the documents. If plaintiff's claim upon attachment is met by a possible superior claim of the Hamburg Bank, this can still be contested under section 924 of the Civil Practice Act, and, under the peculiar circumstances of the case, without the necessity of impounding the documents. It may also be that the Hamburg Bank's claim is only in the nature of an advance or lien upon the goods, which may still be preserved notwithstanding their disposition, the plaintiff taking the goods subject to the bank's possible superior lien. Under the present situation, plaintiff has an attachable interest in the goods.

The disposition of the motion to vacate, upon reargument, must, therefore, remain unchanged.