## JACOBSON v. HAHN et al.

### No. 246.

Circuit Court of Appeals, Second Circuit.

March 1, 1937.

434

Robert H. Jackson, Asst. Atty. Gen., Sewall Key, Frederic G. Rita, and Donald J. Marran, Sp. Assts. to Atty. Gen., and Ralph L. Emmons, U. S. Atty., of Syracuse, N. Y., for appellants.

James M. Noonan, of Albany, N. Y., for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

·MANTON, Circuit Judge.

Both plaintiff and defendants appeal from a decree awarding to the plaintiff 25 and to the defendants 50, $1,000 Liberty loan bonds, of a total of 75, deposited as bail for Arthur Flegenheimer, who was charged with a criminal offense in the Northern District of New York. Defendant Higgins, as collector of internal revenue of the Third district of New York, filed a lien for income taxes due the government from Flegenheimer and contends that all these bonds belonged to Flegenheimer or were purchased with money which he borrowed.

On December 20, 1934, the bonds were deposited by plaintiff as bail in a removal proceeding to the Southern District of New York. After indictment of Flegenheimer on February 20, 1935, for the same offense as charged in the Southern District of New York, the bail in the removal proceedings was withdrawn by consent of counsel and deposited for appearance in answer to the indictment in the Northern District of New York. February 20, 1935, the collector filed with the clerk of the court notices of lien and levy to cover the Liberty bonds. October 10, 1935, the District Court entered an order as of February 20, 1935, granting permission to the collector to file said notice. August 1, 1935, Flegenheimer was acquitted of the crime charged. Plaintiff was then entitled to the return of the bonds deposited as bail if the lien was invalid. 6 U.S.C.A. § 15.

After demand for their return and refusal, plaintiff brought this suit to cancel the notices of lien and levy filed by the Collector and to direct the clerk to turn over the bonds to him. Plaintiff made out a prima facie case at the trial by establishing that he deposited the 75 $1,000 bonds as bail, and that Flegenheimer was thereafter discharged from custody and that a demand was made upon the clerk of the court for the return of the bonds which was refused. The defendants then proved an assessment against Flegenheimer for taxes, interest, and penalty totaling $79,236.-72. The question presented was whether the Liberty bonds so deposited were the property of Flegenheimer and so subject to distraint by the collector for unpaid income taxes.

To establish this defense, the defendants called three witnesses and offered the deposition of one Davis, all for the purpose of showing the sources of the moneys used in the purchase of the bonds. Isaac N. Jacobson, one of Flegenheimer's attorneys, testified that he assisted in securing the bail; that $25,000 was procured from the plaintiff in cash, which was drawn out of several savings banks by him; this witness gave him a promissory note therefor. Davis stated in his deposition that he spoke to Flegenheimer while he was in the Albany County Penitentiary before bail and the prisoner said he could not secure bail and asked Davis to see certain people to secure their help, amongst whom were Weinberg and Schneck. Weinberg gave him $40,000 and Schneck $24,000. Davis gave the latter a receipt which read that the moneys were received for the purpose of securing bail for Flegenheimer, and upon discharge of the bail it was to be returned to Schneck. He was not definite as to whether he gave Weinberg a similar receipt but said that, if he did not, he made an oral agreement to the same effect. He said he understood the money advanced by Weinberg and Schneck was their money. Schneck testified that he gave $24,000 to be used for the specific purpose of bail upon promise he would have his money back after the removal proceedings were over, and that it was his own money withdrawn from a safe deposit box in the Manufacturers Trust Company which was in his name. It was the proceeds of his winnings at horse races. He paid an income tax on these profits. Weinberg said he advanced $40,000 for the specific purpose of bail but that, within two days after he gave the money to Davis, the latter asked if he would loan him (Davis) $11,000 of it, which he did, and Davis repaid it the last of March or the first of April, 1935. The $40,000 was the witness' money; no part belonged to Flegenheimer. Weinberg was a gambler and made his money at the race tracks and other forms of gambling; he kept his money in a steel box kept

in his apartment. He disclaimed any association in business or gambling with Flegenheimer. He paid income tax on his earnings which included the $40,000.

The bonds were purchased by Isaac Jacobson from a banking house and were delivered to the plaintiff, who gave his note for the full amount of the purchase price of the bonds. The court entered a decree for plaintiff holding $25,000 of the bonds was his property and that the remaining $50,000 of bonds was the property of Flegenheimer. Jacobson v. Hahn (D. C.) 14 F.Supp. 339.

█ The burden of proof is on the defendants to establish that the bonds were the property of Flegenheimer. The witnesses called by the defendants, as well as by the plaintiff, established ownership of the bonds in the plaintiff, Weinberg, and Schneck. The court below was asked to rest its decision on suspicion and conjecture and to reject the positive testimony of all the witnesses that Flegenheimer was not the owner and that the money was not loaned to Flegenheimer but was placed in Davis' and then Jacobson's possession for the specific purpose of bail.

██ Plaintiff rightfully can recover because of absence of proof of ownership in Flegenheimer. It was conceded he deposited the moneys with the clerk for Flegenheimer's bail pursuant to section 15, title 6, U.S.C.A. Having called these witnesses to whose testimony we have referred, the defendants may not now successfully question their statements and ask us to reject them as untruthful or unworthy of belief upon mere suspicion that the money was loaned to Flegenheimer. Carlisle v. Norris, 215 N.Y. 400, 109 N.E. 564, Ann.Cas. 1917A, 429; Pollock v. Pollock, 71 N.Y. 137. It is immaterial that Davis' testimony (introduced by the defendants) was taken from his deposition before the United States attorney or that Schneck was later recalled as a witness in behalf of the plaintiff. Hanrahan v. New York Edison Co., 238 N.Y. 194, 144 N.E. 499. The testimony is not inherently improbable nor is it contradicted by evidence and the collector, having presented it, is bound by it. Pastene & Co. v. Irving Nat. Bank, 249 N. Y. 272, 164 N.E. 49; Arnall Mills v. Smallwood, 68 F.(2d) 57 (C.C.A.5).

█ We are therefore obliged to hold the finding below that part of the money was Flegenheimer's is without evidence to support it. Since the fact is sufficiently established that Flegenheimer obtained the $75,000 used to purchase the bonds for bail purposes only, the court below was not at liberty to draw contrary inferences and place total ownership in Flegenheimer upon mere conjecture or an unwillingness to believe the witnesses called by the defendants. Winn v. Consolidated Coach Corp. (C.C.A.) 65 F.(2d) 256, certiorari denied 291 U.S. 668, 54 S.Ct. 453, 78 L. Ed. 1059. Mere suspicion, conjecture, or surmise is insufficient. See Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 344, 53 S.Ct. 391, 395, 77 L.Ed. 819. These moneys were advanced for bail purposes and title did not pass to Flegenheimer. Cf. Van Wagoner v. Buckley, 148 App. Div. 808, 133 N.Y.S. 599. The plaintiff should recover the 75 bonds so deposited in lieu of cash bail pursuant to section 15, title 6, U.S.C.A.

Decree modified.