**McGOGNEY et ux. v. MUTUAL LIFE INS. CO. OF NEW YORK.**

No. 6698.

Circuit Court of Appeals, Third Circuit.

Jan. 31, 1939.

Rehearing Denied May 23, 1939.

Coleman Harrison, of Pittsburgh, Pa., and Arthur S. Arnold, of Philadelphia, Pa., for appellants.

Wm. H. Eckert and Smith, Buchanan & Ingersoll, all of Pittsburgh, Pa. (Frederick L. Allen, of New York City, of counsel), for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and DICKINSON, District Judge.

DAVIS, Circuit Judge.

The appellants are the father and mother of Oliver L. McGogney Jr., who died on May 29, 1931 as a result of an automobile accident. They are also the beneficiaries named in a policy of insurance issued by the appellee on the life of their deceased son which provided for ordinary death benefits of $5000 and double indemnity benefits of $10,000 under certain conditions not here material. Upon the refusal of the appellee to pay their claim under the policy, they brought suit in the District Court. In their original statement of claim they alleged that they were entitled to $10,000 under the double indemnity provisions, but by amendment, after making allowance for a loan of $191, they reduced their claim to $4809 which they alleged was due under the provisions for "continued term insurance" in section 9 of the policy. The District Court being of the opinion that the policy had lapsed for non payment of premiums prior to the death of the insured, directed a verdict for the appellee and entered judgment thereon. From that judgment this appeal was taken.

At the time that this suit was begun the decisions of the Supreme Court in the cases of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, decided April 25, 1938, and Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290, decided May 2, 1938, had not been handed down. The pleadings and arguments before the District Court were based upon the rule existing prior to those cases that "questions concerning the proper construction of contracts of insurance are 'questions of general commercial law'" upon which state law was not considered to be binding. Ruhlin v. New York Life Ins. Co., supra, 58 S.Ct. 861; Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398; Carpenter v. Providence Washington Ins. Co., 41 U.S. 495, 16 Wall. 495, 10 L.Ed. 1044. It does not appear where the policy was executed or delivered. As the record now stands, we only know that the insured probably lived, and that the appellants do live, in Pennsylvania, and that the appellee is a corpo-

650

ration domiciled in New York. On this ground alone, we might reverse the judgment and remand the case "with directions to permit such amendments of the pleadings as may be necessary for [the] purpose" of raising the question of state law. Ruhlin v. New York Life Ins. Co., supra; Brabham v. State of Mississippi, 5 Cir., 97 F.2d 251.

However, whatever law controls the case, we are of the opinion that it should have been submitted to the jury. Some of the questions here involved have not been passed upon by any court so far as we have been able to discover.

The basic question in issue is whether or not the policy had lapsed prior to the death of the insured. The determination of this question depends upon the interpretation to be given to several provisions in the policy, and upon whether or not the appellants have presented sufficient evidence to justify submitting to the jury the question of the payment of interest on a certain loan.

In deciding these questions, it is important to keep in mind five distinct dates as follows: (1) February 27, 1909, the date of the birth of the insured, which is important in the discussion of the appellant's method of computing the "continued term insurance"; (2) August 2, 1927, the date the appellee issued the policy of insurance here involved; (3) July 19, 1930, the date the insured borrowed $191 from the appellee on the security of the policy; (4) November 2, 1930, the date on which a quarterly premium fell due but was not paid, and subsequent to which all premiums were defaulted; and (5) May 29, 1931, the date upon which the insured died.

It will be noted that between August 2, 1927, and November 2, 1930, there was a period of 3¼ years during which all premiums had been paid, and that between November 2, 1930, and May 29, 1931, there elapsed a period of 209 days during which no premiums were paid.

Since the insured died 209 days after the first default occurred in the payment of premiums, the question as to whether or not the policy had lapsed prior to his death resolves itself into the further question of whether or not the provisions in the policy for "continued term insurance" kept that policy alive for a period of 209 days. If it did, the appellants are entitled to recover, but if it did not, they are not entitled to recover.

This question depends upon the interpretation to be given to sections 8, 9, 10 and 11 of the policy[1] (relevant portions

[1] Section 8. Cash Value.

At any time after at least three full years' premiums have been duly paid but not later than three months after default in payment of premium, this Policy may be surrendered for its net cash value. Such net cash value shall be the cash value as defined below less any indebtedness to the Company hereon.

(a) If all past due premiums have been paid, (1) the cash value on any anniversary of the date of the Policy or any premium due date other than an anniversary shall be the reserve at such time for the face amount of this Policy and for any dividend additions hereto increased by any accumulated dividend deposits and less a surrender charge of not more than one and one-half per cent. of the face amount of this Policy, or (2) the cash value on a prior date shall be the cash value mentioned in (1) less interest thereon at the rate of six per cent. a year.

*   *   *   *   *   *

Section 9. Options on Lapse.

(a) Continued Term Insurance. If any premium remain unpaid at the end of the days of grace, and if at least three full years' premiums have been paid, this Policy will, without action on the part of the Insured, continue, as from the due date of such premium in default, as paid-up non-participating term insurance, without Double Indemnity or Disability Benefits.

The amount of such term insurance shall be the face amount of this Policy increased by any dividend additions and by any dividend deposits and decreased by any indebtedness to the Company on this Policy. The term shall be such as the net cash value at such premium due date provided for in Section 8 (adjusted for any later loans, surrender of dividend additions, or withdrawal of dividend deposits) applied as a net single premium will purchase.

*   *   *   *   *   *

Section 10. Table of Cash and Loan Values and Options on Lapse.

These values are computed in accordance with the provisions of Sections 7, 8 and 9 and are on the assumptions that all premiums to end of years indicated have been paid and that there are no dividends or indebtedness.

Any dividend additions or dividend deposits will increase such values and any indebtedness to the Company on this Policy will decrease such values as provided in the above mentioned sections.

quoted in foot note) and also upon the question as to whether or not the interest on the $191 loan to the insured had been paid.

As will be seen from a reading of these sections, the determination of "continued term insurance" is a complicated matter, and it is fortunate that in this case it is not further complicated by "dividend additions" or "dividend deposits", for all dividends on the policy here involved were applied to the payment of the premiums between August 2, 1927 and November 2, 1930.

These provisions indicate that in computing "continued term insurance" it is necessary to determine the four facts: (1) The "cash value" of the policy, (2) its "net cash value", (3) the amount of "continued term insurance", and (4) the term insurance which the "net cash value" when "applied as a net single premium will purchase".

### (1) Cash Value.

Here the appellee used a complicated system of computation in which it referred to the "American Experience Table of Mortality" as provided in section 11 of the policy. It determined that the policy had a cash value of $210.50 as of November 2, 1930. The appellants, on the other hand, used a simple mathematical formula based upon the tables set forth in section 10, and determined that the policy had a cash value of $211.25 on that date. Each side takes up a considerable portion of its brief in defending its method and in attacking that of its opponent. One of the appellant's objections to the appellee's method is based upon the contention that under

state legislation the mortality tables are inadmissible since they were not attached to, or written into, the contract. 40 P.S. Pa., § 441; Cahill's Consolidated Laws of New York, 1930 Ed.Chap. 30 (Insurance Law), section 58. The objection, raised by the appellee, to the appellant's method is that the policy provides that the tables in section 10 are to be used to determine the values only on anniversary dates of the policy and not for intermediate periods as we have here. However, as we shall indicate in our discussion of "net cash value", the difference between the results of these two methods (which is only 75 cents) is not dispositive of the issues here involved. We shall therefore pass by this problem without deciding it, but for the purposes of this opinion we shall assume that the lower figure of $210.50, which favors the appellee, represents the true "cash value".

### (2) Net Cash Value.

According to section 8, the "net cash value" of the policy on any particular date, is the "cash value less any indebtedness to the company". Assuming $210.50 to be the "cash value" on November 2, 1930, we must subtract from it the amount of the indebtedness to the company arising out of the loan of $191 which gives the "net cash value". Is the amount of the indebtedness the loan of $191, as the appellants contend, or $191 plus $3.31 interest as the appellee contends? This difference may seem trifling, but it determines the rights of the parties in this suit.

It is not the function of this court to decide here whether or not the interest of $3.31 had been paid. It is our duty to de-

Values for intermediate periods for which premiums have been paid will be calculated as provided in Sections 7, 8 and 9.

tions, and the reserves and net single premiums mentioned in this Policy shall be computed in accordance with the American Experience Table of Mortality

| At End of Policy year | For Each $1000 Face Amount | | | For Face Amount | |
|---|---|---|---|---|---|
| | Cash Value (Also Loan Value as explained in Section 7) | Paid-up Non-Participating Life Insurance | | Paid-up Non-Participating Continued Term Insurance for | |
| | | | | Years | Days |
| 3 | $38.65 | $115.14 | | 5 | 155 |
| 4 | 53.07 | 155.83 | | 7 | 232 |
| 5 | 73.44 | 212.49 | | 10 | 353 |

* * * * * * * *

### Section 11. Reserves and Net Single Premiums.

The reserve held for the face amount of this Policy and for any dividend addi-

assuming interest at the rate of three per cent. a year, the net single premiums being those at the attained age of the insured.

cide whether or not the appellants presented sufficient evidence to entitle them to have a jury pass upon that question.

A letter, addressed to Oliver L. McGogney, appellant, and signed by Frederick L. Allen as vice president and general counsel of the appellee, was admitted in evidence on behalf of the appellants. It reads as follows:

"Dear Sir:

We are in receipt of your letter of the 7th inst. in reference to the above numbered policy. This policy for $5,000 was issued under date of August 2, 1927, and required by its terms the payment of a quarterly premium of $45.35. The policy was assigned to the Company as collateral security for a loan of $191., which fell due August 2, 1930. The *loan was continued by payment of interest to August 2, 1931, but the premium which* fell due November. 2, 1930 was not paid. The policy in accordance with its terms was continued on the Company's books as extended term insurance for $4,806, which expired April 12, 1931. The policy has no value." (Italicizing ours.)

This letter states that the interest to August 2, 1931 had been paid. The appellee has attempted to explain away this statement by saying that when the debt became due and payable on August 2, 1930, the interest then due, which was only 44 cents, was added to the principal, which continued to draw interest until the insured died on May 29, 1931, at which time a total interest of $3.31 was due. This explanation appears to be contrary to the fact stated in the letter. The appellants contend that the interest was paid in accordance with the statement in the letter. Since this is an appeal from a directed verdict, we must confine ourselves to the determination of whether the evidence "with all legitimate inference therefrom, fairly tends to support" the contention of the appellants and exclude "all evidence or inferences in conflict therewith". 5 C.J. Secundum, Appeal and Error, pp. 788, 789, § 1671a; Corbalis v. Newberry Tp., 132 Pa. 9, 19 A. 44, 19 Am.St.Rep. 588; P. Pastene & Co., Inc., v. Irving Nat. Bank, 249 N. Y. 272, 164 N.E. 49.

Assuming that the interest had been paid, and that the cash value was $210.50, the "net cash value" is $210.50 minus $191 or $19.50.

(3) The Amount of "continued term insurance".

Under the provisions of section 9 of the policy, the amount of term insurance is "the face amount of the policy * * * decreased by any indebtedness to the company * * *". Assuming that the interest on the loan had been paid, the amount of "continued term insurance" was $5000 minus $191, or $4,809.

(4) Term of the "continued term insurance".

According to the provisions of section 9 of the policy, the "continued term insurance" shall be for such period as the net cash value ($19.50 in this case) "applied as a net single premium will purchase". Under the provisions of section 11 a "net single premium * * * shall be computed in accordance with the American Experience Table of Mortality * * * the net single premiums being those at the attained age of the insured."

The appellee used this method as follows: Taking the age of the insured as 22 "at his birthday nearest to November 2, 1930", it found that the cost of this term insurance per year is $7.67 per $1000. This would give a cost per day of $.021013 per $1000 or a cost per day for the amount of this policy ($4809) of $.1010515. Following out this computation, the "continued term insurance" here involved, could not have extended for the full 209 days required by the appellant's case, but would have been extended for only 192 days or at the most 200 days, depending upon whether the "net cash value" was $19.50, as the appellee contends or $20.25, as the appellant contends.

In addition to the use of the American Experience Table of Mortality there is another serious difficulty with the method of computation employed by the appellee. On August 2, 1930, the third anniversary of the policy, the insured's age was 21 at his nearest birthday. According to the American Experience Table of Mortality, admitted in evidence over the objection of appellants, the cost per year for this "continued term insurance" is given as $7.62 per $1000. The cost per day, therefore, is $.020876 per $1000. At this rate the net cash value of $38.65, per $1000 of insurance could purchase "continued term insurance" for only 1851 and a fraction days, but according to the tables contained in section 10 of the policy $38.65, on the third anniversary date of the policy, would purchase 1980 days of "continued term insurance", or 129 days more under these tables than under the system of computation used

by appellee. There is nothing in the policy or in the American Experience Table of Mortality explaining this difference.

The appellee's explanation involves a rule of accounting used by it, under which the cost per day of continued term insurance decreases as the term progresses. Thus, the cost for term insurance for the first month of a year's term, would be greater than the cost for the last month. It may be that this rule of accounting is based upon sound business judgment and that one well versed in the insurance business would know about it and its application. But ordinary people, buying insurance are not and can not be expected to be conversant with such technical rules. The legislatures of both New York and Pennsylvania have recognized this fact and have enacted statutes excluding such rules from consideration when interpreting a policy of insurance, unless they are written into or attached to it. 40 P.S.Pa. § 441; Cahill's Consolidated Laws of New York, 1930 Ed., Chap. 30 (Insurance Law), section 58.

The appellee says that it followed the provisions set forth in sections 9 and 11 of the policy in computing the period of "continued term insurance", but the results reached when this method is used are quite different from those contained in section 10 of the policy. There being an apparent conflict between these provisions all doubts must be resolved against the appellee and in favor of the appellants. 37 C.J. 408; 32 C.J. 1152; Hillman Transportation Co. v. Home Ins. Co., 268 Pa. 547, 112 A. 108; Krebs v. Philadelphia Life Ins. Co., 249 Pa. 330, 95 A. 91, Ann.Cas. 1917D, 1184; Lite v. Firemen's Ins. Co., 119 App.Div. 410, 104 N.Y.S. 434, affirmed 193 N.Y. 639, 86 N.E. 1127; Paskusz v. Philadelphia Casualty Co., 213 N.Y. 22, 106 N.E. 749. In accordance with the tables in section 10, $19.46 was sufficient to purchase "continued term insurance" for 209 days from November 2, 1930. The insured died on the 209th day from that date. The "net cash value" in possession of the appellee to purchase insurance for the insured was at least $19.50, or 4 cents more than the amount required to keep the policy alive. This being true, the right of the appellants to recover depends entirely upon the question as to whether or not the interest on the $191 loan was paid. This question under proper instructions should have been submitted to the jury.

The judgment is reversed and a new trial awarded with directions to permit necessary amendments to the pleadings.