**Ted NEELY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 72-705.**

United States District Court, S. D. Florida.

April 17, 1973.

John R. Young, Hamilton, James, Merkle & Young, West Palm Beach, Fla., for plaintiff.

William Holmes, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

FULTON, Chief Judge.

This is an action for wrongful levy brought pursuant to 26 U.S.C. § 7426 to recover the sum of $25,000 which was deposited with the Clerk of this Court as an all-cash appearance bond for August Charles Michael Sanzone and which the Clerk subsequently paid to the United States in accordance with a notice of levy as to Sanzone's outstanding federal tax liability. This Court has jurisdiction of this cause. 26 U.S.C. § 7426 and 28 U.S.C. § 1346(e). The factual question presented for trial was whether the $25,000 constituted the sole property of plaintiff, Ted Neely, and therefore was not subject to levy pursuant to Sanzone's tax liability or whether the $25,000 was Sanzone's property received as a gift or a loan from plaintiff which was properly subject to levy by the defendant, United States.

### PRIOR CRIMINAL ACTION

Although the evidence adduced at trial made reference to certain dates of proceedings in United States of America v. August Charles Michael Sanzone, Case No. 71–741–Cr–CF, this Court takes judicial notice of the following facts with respect to the proceedings in that cause.

On November 19, 1971, a complaint was filed in this Court against August Charles Michael Sanzone charging said defendant with illegal possession of a firearm in violation of 18 U.S.C. App. § 1202(a). A bond hearing was conducted on November 24, 1971, before United States Magistrate David Roth in West Palm Beach, Florida, wherein bond was set in the amount of $25,000. At the hearing a $25,000 all-cash appearance bond was executed by Sanzone and approved by the Magistrate on the same date, November 24. On December 10, 1971, an indictment was returned against Sanzone upon the firearm charge, and thereafter on January 21, 1972, the United States voluntarily dismissed the indictment against Sanzone.

Ted Neely, the plaintiff herein, filed a petition on February 22, 1972, in the criminal action for refund of Sanzone's cash bail, which petition was denied by this Court on March 15 without prejudice to Neely's right to commence an appropriate civil action. This lawsuit was then instituted.

### FACTS

The evidence presented at trial establishes that on December 13, 1971, a jeopardy assessment for unpaid federal taxes was made against August C. Sanzone and Lucy S. Sanzone in the amount of $203,176.53, and notice of the federal tax lien resulting from this assessment was duly recorded in the office of the Circuit Court of Broward County, Flori-

da on December 16, 1971. A notice of levy was served upon the Clerk of this Court on December 17, 1971, attaching funds of Sanzone held in the registry of the Court, which sums were applied toward partial satisfaction of Sanzone's tax liability. In accordance with 26 U. S.C. § 7426(c), the assessment and tax lien of the United States is conclusively presumed to be valid for the purposes of this lawsuit.

With regard to the funds used to post Sanzone's appearance bond, the evidence demonstrates that prior to the bond hearing the entire $25,000 was the property of plaintiff. To assemble the total sum plaintiff withdrew $15,000 in three separate bank drafts of $5,000 each from his account at the Royal Bank of Canada in Nassau on November 23, 1971, said drafts made payable to the client-trust account of plaintiff's attorney, Johnson & Heller. Plaintiff originally acquired this $15,000 as a loan from his father, plaintiff planning to invest the borrowed funds in property located in Freeport, Grand Bahama Islands. Plaintiff received the remaining $10,000 on November 20, 1971, as consideration for an assignment by plaintiff, as the secured party, to an attorney, Richard Birnbaum, of a security agreement covering the transfer of a liquor license.

Plaintiff met with Birnbaum on the date of the bond hearing, November 24, and delivered the $15,000 in bank drafts to Birnbaum, his attorney, instructing Birnbaum to use the total sum of $25,000 to post Sanzone's appearance bond. Plaintiff accompanied Birnbaum to the Magistrate's bond hearing in West Palm Beach which began at 3:30 p.m. on that date. Although Birmbaum at some point acted as counsel for Sanzone in the criminal action, Birnbaum did not represent Sanzone at the bond hearing, and his appearance at hearing was as attorney for plaintiff, Ted Neely. Attorney William Sprott appeared as counsel for Sanzone at the bond hearing.

The evidence is uncontroverted that the $25,000 was never delivered to Sanzone or to counsel for Sanzone and that the monies remained in Birnbaum's possession until Birnbaum deposited the $25,000 with the Magistrate. At some point during the hearing and prior to the time of posting of the bond, plaintiff was advised by Birnbaum to leave the hearing, whereupon plaintiff left. Plaintiff was not present at the hearing when Birnbaum deposited the fund with the Magistrate.

When Birnbaum presented the $25,000 cash to the Magistrate for Sanzone's bond, Magistrate Roth was surprised and concerned since counsel for Sanzone had earlier represented to the Magistrate that a $25,000 bond was far beyond Sanzone's means and ability to post. After hearing the Magistrate's expressions of surprise, statements were made to the Magistrate to the effect that Sanzone "had friends." The Magistrate was further concerned with the safekeeping of the $25,000 in cash since it was approximately four or five o'clock in the afternoon on the day before Thanksgiving, and the banks were then closed and would remain closed until the following Monday. No representations were made to the Magistrate that the money was the property of plaintiff or that the money was the property of anyone other than Sanzone.

At trial, Birmbaum testified that he requested a receipt from the Magistrate. Magistrate Roth testified that he did not recall Birnbaum asking for a receipt but that if one had been requested, he may have told Birnbaum that, due to the lateness of the hour, his secretary had gone for the day and it would not be possible to draft a receipt. The Magistrate further testified that he may have told Birnbaum that the execution of the bond with the Magistrate's approval would be sufficient with respect to a receipt. The bond was then signed by Sanzone and was approved by the Magistrate. Although the bond sets forth on two lines "Name of Surety" with appropriate blank spaces thereafter, no surety's name was entered on Sanzone's bond.

Plaintiff testified at trial that he and Sanzone had neither negotiated nor discussed the posting of Sanzone's bond and that because of his close friendship with Sanzone, plaintiff had contacted attorney Al Johnson upon learning of Sanzone's arrest to inquire as to procedures for Sanzone's release. At no time did plaintiff intend to make a gift or a loan of the $25,000 to Sanzone. Plaintiff testified that he was confident that Sanzone would comply with the terms and conditions of the bond, that he trusted Sanzone and that the money would be returned to plaintiff in a short time.

## THE LOAN THEORY

It is the contention of the Government that the $25,000 levied upon is not the property of plaintiff but, rather, is the property of Sanzone subject to the claims of any creditors, including the United States and plaintiff. The Government maintains that plaintiff made a gift of or loaned the $25,000 to Sanzone, and thus plaintiff has at best only an unsecured claim or lien upon the money which has not been reduced to a judgment and is, accordingly, subordinate to the tax lien of the United States.

■ With regard to the question of whether plaintiff made a gift of the monies to Sanzone, the Court finds that the $25,000 was never in the possession of Sanzone or his agents, and therefore there was no delivery nor has there been constructive delivery of the fund to Sanzone. Moreover, there was no donative intent on the part of plaintiff to make a gift, and thus it is the ruling of this Court that plaintiff's posting of the bail monies did not constitute a gift to Sanzone of those funds. ,

In support of its claim that money loaned by a third party for the posting of bail is properly subject to levy in satisfaction of a criminal defendant's tax liability, the Government cites to United States v. Brown, 27 A.F.T.R.2d 70–522 (W.D.Tex.1970), aff'd per curiam, 441 F.2d 727 (5th Cir. 1971) appeal dismissed sub nom. Rey v. United States, 405 U.S. 907, 92 S.Ct. 948, 30 L.Ed.2d

778 (1972), and Calvin & Co. v. United States, 264 Cal.App.2d 571, 70 Cal.Rptr. 578 (1968). In *Calvin* the California appellate court held that a corporation's attachment lien which was not reduced to judgment was inferior to an unfiled federal tax lien against a third party where the third party had borrowed funds from the corporation, the funds were in the third party's possession and thereafter the third party deposited the funds as a cash bond to release the corporation's attachment. The Court held that the money was the property of the debtor third party after it passed into the debtor's possession and thus was subject to levy in accordance with the superior tax lien. *Calvin* is clearly distinguishable from this cause since the Court in *Calvin* specifically found that the debtor obtained full possession and control over the borrowed funds and that a loan had in fact been transacted. The plaintiff in this cause maintains that no loan was ever intended or transacted and that the $25,000 in question was and is the property of the plaintiff.

In *Brown,* a case more analogous to this lawsuit, the district court found that money loaned to a criminal defendant by a third party for the purpose of depositing the borrowed funds as cash bail was subject to a federal tax levy against the criminal defendant, said tax lien being superior to the rights of the creditor. The creditor third party was held to have merely a claim against the criminal defendant for the amount of the borrowed money posted as bail. The *Brown* opinion finds, without illuminating factual background, that the bail money was a loan to the criminal defendant. Significant factual details such as whether there was a loan agreement between the third party and the criminal defendant and whether the money was actually delivered to and posted by the criminal defendant are not set forth in the district court's opinion. Thus, *Brown* is not dispositive of this lawsuit. Plaintiff does not dispute the correctness of the decision in *Brown* but maintains that it is inapplicable to this

cause since here a loan was never intended, negotiated or consummated.

The question for resolution by this Court is whether the posting of Sanzone's bond by plaintiff's attorney *constituted* a loan to Sanzone thereby rendering the fund properly subject to levy. The parties have not cited to case authority controlling this lawsuit with regard to whether a third party, upon the posting of a cash appearance bond for a criminal defendant and in the absence of a loan, thereby loses ownership of the funds after depositing the bail money.

Research discloses three cases which may be pertinent to this issue. In Rudd v. United States, 138 F.2d 745 (7th Cir. 1943), a third party, the petitioner, held a Western Union receipt for $2,500 which was deposited as bail for a criminal defendant. The Clerk of the District Court released $2,000 from the fund to satisfy a $2,000 fine imposed by the Court upon the defendant. In holding that the District Court properly denied petitioner's application for recovery of the $2,500, the Court found that the petitioner had failed to allege and demonstrate her ownership of the funds and had failed to sign the bond as surety. In Heine v. United States, 135 F.2d 914 (6th Cir. 1943), two third parties deposited $25,000 cash for a criminal defendant's appearance bond. The third parties executed the bond as sureties and the Clerk of the District Court issued them a receipt for the funds. Holding that a fine of $5,000 imposed by the Court upon the criminal defendant could not be satisfied from the $25,000, the Court concluded that the fine did not constitute a lien upon the funds on deposit where the money was undisputably advanced by the sureties from their own funds.

*Rudd* and *Heine* make reference to a conclusive presumption created by state bail statutes that money deposited on behalf of a criminal defendant by a third person becomes the defendant's money for all purposes of deposit. *Heine* rejected the application of the presumption since, under the facts of that case, the money was proven to be the property of the depositor third parties. In *Rudd* the presumption was discussed, but the controlling factor in denying the refund in that case was the petitioner's failure to allege and prove ownership of the funds. In both cases the applicability *vel non* of the presumption was based upon state bail statutes giving rise to the presumption; therefore, the cases and the underlying presumption do not control this lawsuit. Bail in federal criminal cases is now governed by the Bail Reform Act of 1966, 18 U.S.C. § 3146, which creates no presumption as to the ownership of funds deposited as bail. Furthermore, *Heine* and *Rudd* deal with the imposition of fines upon the criminal defendant and not the attachment of federal tax liens upon money deposited as bail.

Under a complex factual situation, it was held in Bank of Hawaii v. Benchwick, 249 F.Supp. 74 (D.Hawaii 1966), that a $10,000 fund, deposited by a criminal defendant as an appeal bond with the Clerk of the District Court, was at all times the property of the plaintiff bank and that the plaintiff was therefore entitled to recover the funds remaining on deposit in the registry of the Court after payment of a fine imposed upon the defendant by the Court. Despite the fact that the criminal defendant's appeal was still pending, the Court held that a third-party civil action could be maintained by the plaintiff bank to ascertain the true title to the funds and to recover the funds, even though the purpose of the appeal bond had not been accomplished. *Benchwick* was primarily concerned with the propriety of the maintenance of a civil action by a third party to recover bail monies prior to satisfaction of the purpose of the bond, and thus it is distinguishable from the facts and issues presented in this cause.

It is the finding of this Court that plaintiff did not intend to loan $25,000 to Sanzone; that the funds were the property of the plaintiff at the time the appearance bond was executed and

718

that plaintiff never intended that Sanzone receive the money once the conditions of the bond were satisfied. Furthermore, plaintiff's attorney sought a receipt for the monies so that upon the satisfaction of the bond the fund would be returned to Birnbaum as agent for plaintiff.

The Government relies heavily upon the fact that neither plaintiff nor plaintiff's counsel signed Sanzone's appearance bond as surety. This Court takes judicial notice of the fact that, in the normal course of events, upon the satisfaction of the appearance bond, the Clerk of this Court would thereupon refund the cash bail to Sanzone as signator on the bond or to Sanzone's attorney, or both. However, this Court is not convinced that the failure of plaintiff or his counsel to sign the bond as surety constitutes a loan of the deposited money to Sanzone as a matter of law. Moreover, it appears to the Court that a receipt for the money would have been provided to Birnbaum, plaintiff's attorney, had it not been for the lateness of the hour of the bond hearing rendering the Magistrate unable to provide a receipt since his secretary had gone for the day.

## CONCLUSION

The evidence establishes that the $25,000 in question was the sole property of plaintiff when it was deposited as cash bail by plaintiff's attorney and that a loan of the fund to Sanzone was neither intended nor transacted. The Government has failed to come forward with evidence demonstrating that this money was anything other than the property of plaintiff or establishing a loan of plaintiff's money to Sanzone. It is the opinion of this Court that plaintiff acted as surety upon Sanzone's all-cash appearance bond.

Therefore, it is the ruling of this Court that the United States has wrongfully levied upon the $25,000 deposited into the registry of the Court as cash bail since the fund was and is the property of plaintiff, Ted Neely, and thus is not subject to levy for Sanzone's out-standing federal tax liability. In accordance with 26 U.S.C. § 7426(b)(2)(B), plaintiff is entitled to a judgment for the amount of money levied upon, together with interest as allowed by § 7426(g)(1) at the rate of six percent per annum from the date the defendant received the money pursuant to the wrongful levy.

This Memorandum Opinion shall serve as findings of fact and conclusions of law in accordance with Rule 52(a), Fed. R.Civ.P. Counsel for plaintiff shall forthwith submit a final judgment form for entry by the Court.