UNITED STATES of America,
Plaintiff–Appellant,

v.

John James BADGER,
Defendant–Appellee,

Capital Tracing, Inc., Real Party in
Interest, Appellee.

No. 89–50251.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1990.

Decided April 16, 1991.

Charles Bricken, Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Leslie T. Jones, Jr., Gallagher & Kennedy, Phoenix, Ariz., for defendant-appellee and real party in interest appellee.

Before ALARCON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellee John James Badger ("Badger") was indicted on criminal charges and ordered to post a $100,000.00 bail bond. The bond was posted by third parties. After Badger was convicted, the IRS attempted to levy on the bond for unpaid taxes owed by Badger. The district court ordered the IRS to show cause why the bond should not be exonerated and paid over to those who had posted it. After a hearing, the district court concluded that allowing the IRS to levy on bail bonds would impermissibly interfere with the integrity of the judicial

branch and ordered the bond exonerated. We reverse and remand.

## FACTS

The facts of this case are, for the most part, undisputed. Badger was indicted on six fraud-related offenses and was ordered to post a $100,000.00 cash bond. On July 29, 1985, Capital Tracing, Inc., ("Capital") posted the $100,000.00 bond with approximately $73,000 of its own funds and approximately $27,000 loaned to Badger by other people or entities for the purpose of posting bond.

Capital is a publicly held corporation. In 1985, Badger owned 34,000 shares of Capital, which then had approximately 10,310,-000 shares outstanding.

On August 22, 1985, the IRS served a notice of levy upon the Clerk of the District Court for the Central District of California. The notice of levy stated that its purpose was "to attach to the $100,000 cash bond" posted for Badger. The IRS claims that Badger owes more than $180,582 in taxes assessed on or before July 13, 1982.

Badger was found guilty. The Ninth Circuit affirmed his conviction in *United States v. Badger*, 849 F.2d 1476 (9th Cir. 1988). Thereafter, Badger surrendered himself for incarceration. The district court then ordered that the cash bond be exonerated.

Upon being apprised of the IRS's notice of levy, the district court ordered the IRS to show cause why the $100,000 cash bond should not be exonerated and paid over to Capital. The IRS cited Internal Revenue Code ("I.R.C.") § 6331, which allows the IRS to levy upon nearly all property in which a delinquent taxpayer has an interest. The IRS contended that the property belonged in part to Badger and, in any event, it would be inappropriate to determine ownership in such a proceeding; any party claiming an interest in the property could seek a refund under I.R.C. § 6343(b) or § 7426(a)(1). Badger filed a response to the show cause order stating that he did "not own [or] possess any interest in the cash posted for his bond."

On May 8, 1989, the district court held a hearing on the show cause order. On May 11, 1989, the district court ordered that the bond proceeds be paid over to Capital on May 18, 1989. 711 F.Supp. 1008. In its memorandum order, the district court did not decide whether Badger had any interest in the disputed bond. Instead, the district court held that I.R.C. § 6331 does not allow the IRS to levy upon bail bonds, reasoning that such a levy would impermissibly threaten the institutional integrity of the judicial branch. *See Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

On May 15, 1989, the United States appealed the district court's order and filed an emergency motion for a stay of the district court's order pending appeal. On May 17, 1989, this court granted the stay.

On December 26, 1989, this court issued a request for supplemental briefing on:

(1) whether the IRS has standing to appeal the order exonerating the bond in a criminal proceeding;

(2) whether the district court's order exonerating the bond is appealable; and

(3) whether this action is more appropriately treated as a writ of mandamus.

Appellant filed its supplemental brief on January 16, 1990. Appellee did not file a supplemental brief.

## STANDARD OF REVIEW

The material facts are not in dispute. This appeal involves only questions of law, which are reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## DISCUSSION

In the bail exoneration proceedings held below, the district court held that the IRS could not levy on the bail bond posted on behalf of Badger because such a levy would violate the constitutional principle of separation of powers. We reverse because the district court had no jurisdiction to address the validity of the IRS's levy under separation of powers principles in a bail

exoneration proceeding. We remand for the district court to comply with the levy.

## I. *Standing and Appealability of Order*

■ An order exonerating a bail bond and providing for distribution of the funds is directly appealable as a "collateral order." *United States v. Arnaiz*, 842 F.2d 217, n. 2 (9th Cir.1988); *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). Thus, the district court's order in this case was appealable.

■ The IRS had standing to appeal the district court's order. Nonparties may appeal a district court order where: (1) the appellant participated in the district court proceedings even though not a party, and; (2) the equities of the case weigh in favor of hearing the appeal. *Id.* The IRS participated in the proceeding by responding to the show cause order and "vigorously disputing" the extent to which Badger had an interest in the bail bond. The equities weigh in favor of hearing this appeal. An appeal is the most expeditious way to address the IRS's claim and, if the IRS prevails, to allow it to collect a major portion of Badger's unpaid taxes. Moreover, it would be unjust to prevent the IRS from seeking appellate review to contest the power of the district court to enter an order which directly addresses the validity of the IRS's levy upon a bail bond. Additionally, the district court ordered the IRS to show cause why the cash bond should not be exonerated, thereby drawing the IRS into the litigation.

## II. *Jurisdiction*

■ The IRS's attempted levy is based on I.R.C. § 6331, which provides:

If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

I.R.C. § 6331 provides for a lien on "all property and rights to property" belonging to the delinquent taxpayer. There is no exception for bail bonds. Moreover, there is no requirement that the IRS prove that any portion of property being levied upon belongs to the delinquent taxpayer before it can levy on the property. Under I.R.C. § 7421(a), the Anti–Injunction Act,[1] if any person wishes to contest the levy, that person must bring a wrongful levy action under I.R.C. § 7426 or other provisions specified in the Anti–Injunction Act. These I.R.C. sections indicate that the district court was required to honor the IRS's levy without inquiring into its validity or determining how much of the bail bond belongs to Badger. We must determine, however, whether the statutory scheme providing for the exoneration of bail bonds requires a different reading of the levy provisions of the internal revenue code or gives the district court jurisdiction to rule on whether the taxpayer-defendant owns any portion of the bail bond.

Under 18 U.S.C. § 3149 and Fed.R.Crim. Proc. 46, the district court had jurisdiction to exonerate the bond upon Badger's surrender. However, Section 3149 and Rule 46 do not expressly give the district court jurisdiction to decide competing claims to the bond. This case presents the narrow jurisdictional issue whether the power to rule on the validity of the IRS's levy "can fairly be implied as necessarily ancillary to the exoneration of the bond." *U.S. v. Arnaiz*, 842 F.2d 217, 220 (9th Cir.1989).

In *Arnaiz*, this court considered whether a district court before which a narcotics prosecution was pending had jurisdiction, ancillary to its power to exonerate a bail

---

**1.** I.R.C. § 7421(a) provides:

(a) Tax.—Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), and 7426(a) and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

bond, to consider disputes related to the bond. We held that the district court had jurisdiction to decide whether the surety was required to return collateral to the defendant. The court reasoned that, if the defendant had posted collateral with the surety, the defendant had indirectly posted a portion of his bail and was therefore an "obligor" under Rule 46(f).[2] The district court could not fulfill its statutory duty to release the bail without determining which "obligor" was entitled to receive it.

The *Arnaiz* court also held, however, that the district court did not have jurisdiction to resolve a dispute between the bondsman and the defendant regarding a bond premium. The court reasoned that the premium dispute was not "so closely related to the purposes of the bail provisions (i.e., to secure the presence of the defendant) that denial of jurisdiction would necessarily interfere with the district court's ability to carry out its statutory mandate." *Id.*

In the present case, the IRS's claim to the bail bond is based on I.R.C. § 6331, which allows for levy upon "all property and rights to property" belonging to a delinquent taxpayer. As discussed earlier, there is no requirement that the IRS prove what portion of property being levied upon belongs to the delinquent taxpayer before it can levy on the property. If any person wishes to contest the levy, that person must bring a wrongful levy action under I.R.C. § 7426. Thus, in contrast to *Arnaiz*, the district court has no need to conduct a hearing to determine what portion of the bond belongs to Badger. If Capital wishes to contest the levy on the ground that it violates separation of powers or that none of the property belongs to Badger, it must bring a wrongful levy action under IRC § 7426.

In *United States v. Doyal*, 462 F.2d 1357 (5th Cir.1972), the Fifth Circuit allowed the IRS to levy upon a bail bond and held that a defendant could not properly enjoin the

levy because of the Anti–Injunction Act. In *Doyal*, the defendant filed a motion to restrain the IRS from entering its tax levy against his bail deposit. The court held that the district court could not entertain defendant's motion because the Anti–Injunction Act barred the motion. Thus, the court concluded, the IRS could not be restrained from levying on the property unless a separate suit is brought under relevant I.R.C. provisions (e.g., Section 7426). We agree with the Fifth Circuit's analysis in *Doyal*, and hold that the district court lacked jurisdiction to consider whether the IRS's lien was valid; the court should have simply complied with the levy by turning over the funds to the IRS. *See also Bankers' Mortgage Co. v. McComb*, 60 F.2d 218, 222 (10th Cir.1932).

Appellee cites *Flores v. United States*, 551 F.2d 1169 (9th Cir.1977), for the proposition that the government has the burden to show that the property belongs to the taxpayer before it can levy upon the property. *Flores*, however, involved a wrongful levy action under I.R.C. § 7426, and is inapplicable to the present case.

Accordingly, we reverse and remand for the district court to comply with the IRS's notice of levy.

REVERSED and REMANDED.

O'SCANNLAIN, Circuit Judge, dissenting:

Because of the chilling effect of the majority's decision on the integrity of the judicial bail system, I must dissent.

The district court was faced with the choice, upon exoneration of the bond, of releasing bail proceeds (1) to their owner, the entity (admittedly not the defendant) which actually posted the bond with its own funds (including loan proceeds), or (2) to a creditor of the defendant, with absolutely no enforceable interest in the funds, which happens to be the Internal Revenue

---

**2.** Rule 46(f) provides:

    **(f) Exoneration.** When the condition of the bond has been satisfied or the forfeiture thereof has been set aside or remitted, the court shall exonerate the *obligors* and release

any bail. A surety may be exonerated by a deposit of cash in the amount of the bond or by a timely surrender of the defendant into custody.

Service (IRS). The majority concludes that the exonerated bail simply should be paid to the IRS, which filed a levy upon the bond, thereby making new law for the circuit. I disagree. I would remand for the purpose of holding a hearing to determine whether the collateral delivered to the court by a third party includes any "property ... belonging to [the taxpayer]" under 26 U.S.C. § 6331.

Supervision of the bail system lies within the inherent power of the court to call an accused to stand trial. *See United States v. Smith,* 444 F.2d 61, 62 (8th Cir.1971) (per curiam), *cert. denied,* 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972). The courts clearly have a deep interest in preserving the viability of the bail system in order to assure the attendance of criminal defendants at trial, and should be most reluctant to countenance interferences with that system. Indeed, there is a civil liberties interest as well; when a third party comes to the aid of a defendant by posting bond on his behalf, the court has a duty to honor such trust.

If the IRS is permitted to use the federal judiciary as a "quasi-collection agency" (in the words of the district court), criminal defendants will have less incentive to appear once a bond has been posted. Criminal defendants who are delinquent taxpayers may be certain that any monies deposited by them with the court will *not* be returned to them, whether or not they appear before the court. Prudent third parties, even those without close financial connections to the defendant, will be chary of providing defendants with bail funds, or at least will be forced to exact higher premiums or to impose greater collateral requirements, contrary to the public policy inherent in the Bail Reform Act.

There is no need for the court to adopt the approach espoused by the majority today. True, it is often stressed that an available procedure for contesting an IRS levy, as opposed to any other sort of levy, is to bring a civil action under 26 U.S.C.

§ 7426. *See, e.g., Winebrenner v. United States,* 924 F.2d 851, 853–55 (9th Cir.1991). I do not believe that Congress, in enacting the levy statutes of the Internal Revenue Code, foresaw their use to harass third parties and to interfere with the smooth functioning of the courts. There appears to be no reason why the IRS cannot simply levy upon the property once it is in the possession of Capital Tracing, Inc., the record owner, immediately upon release from deposit with the court; if the IRS indeed has an enforceable interest in the funds it can be adjudicated promptly in the customary fashion without complications involving the bail system and separation of powers. There is no danger of a federal district court attempting to hide the money from the IRS. The automatic lien against a delinquent taxpayer's property still protects the agency from fraudulent conveyances should the taxpayer in fact have an interest in property temporarily insulated from seizure by deposit with the district court. *See United States v. National Bank of Commerce,* 472 U.S. 713, 719, 105 S.Ct. 2919, 2923, 86 L.Ed.2d 565 (1985).

The authorities do not command the result reached by my colleagues. We have never held that the IRS may levy upon property posted as a bail bond, even assuming, unlike here, the posting party was the taxpayer.[1] Even assuming that we would be inclined to follow it, no extra-circuit precedent commands the result reached today.

*United States v. Doyal,* 462 F.2d 1357 (5th Cir.1972) (per curiam), upon which the majority places great reliance, is clearly distinguishable. In that case, the criminal defendant posted $3,500 in bail with the district court. *Id.* at 1357–58. In contrast, Badger did not deposit any of his money with the district court, and has disclaimed all interest in the bail funds posted for his benefit. Thus, we learn little applicable to our case from the Fifth Circuit's ruling in *Doyal* that no exception to the Internal Revenue Code's anti-injunction provision,

---

**1.** We have permitted IRS levies upon property involuntarily seized pursuant to a criminal proceeding and held by a district court. *See United States v. Freedman,* 444 F.2d 1387, 1388 (9th Cir.), *cert. denied,* 404 U.S. 992, 92 S.Ct. 538, 30 L.Ed.2d 544 (1971).

section 7421(a), applies when a criminal defendant attempts to restrain enforcement of an IRS levy. *See id.* at 1358.

Other authority directly supports my view. *Bankers' Mortgage Co. v. McComb,* 60 F.2d 218 (10th Cir.1932), although cited by the majority for the proposition that the court simply should have complied with the levy, in fact holds to the opposite effect:

> But when the conditions of the bail bond have been fully met and the whole of the bond or notes deposited, or a residue thereof, remains in the hands of the clerk, a court in a proper proceeding may and should inquire into the true title thereto as between third persons and the defendant or his creditors, and direct that they be delivered to the true owner.

*Id.* at 222 (citations omitted). Similarly, in *United States v. Eschweiler,* 782 F.2d 1385 (7th Cir.1986), the court upheld the district court's denial of defendant's motion to exonerate while explicitly upholding the district court's jurisdiction to determine the validity of the levy. *See id.* at 1392–93.

Our test for determining when a district court should hold a hearing to settle a bail bond dispute is well-settled. In *United States v. Arnaiz,* 842 F.2d 217 (9th Cir. 1988), we concluded that a district court attempting to exonerate a bail bond pursuant to rule 46(f) had jurisdiction to resolve disputes over the collateral posted to obtain the bond, but not over the premium paid (or due) to obtain the bond. Disputes between defendants and their sureties over the premium, we observed, were merely "contractual" and would not affect the certainty of a defendant's appearance in court. *See id.* at 220. In contrast, a dispute over return of collateral is "so inextricably linked with the exoneration order that it must be considered to be within the district court's jurisdiction." *Id.* at 221. We emphasized that the bond exoneration rule specified that "obligors" were entitled to the return of their security, *see* Fed.R.Crim.P. 46(f), and that "collateral st[ands] in the same position as if it had been posted directly with the court." *See* 842 F.2d at 221. Significantly, we noted that "the court's statutory duty of 'releas[ing] any bail' could not

be fulfilled without a determination of which party was entitled to receive it." *See id.* at 222 (brackets in original).

It seems clear to me that the district court here was also faced with the question of which party, the IRS or the original depositors, was entitled to receive the cash bail. The IRS's virtual confiscation of bail bonds will clearly impact the certainty of a criminal defendant's appearance in court: the mere threat of an IRS levy will discourage defendants and third parties from locking substantial funds away with a court which will not return them upon completion of the defendant's obligations. *Arnaiz* authorizes district courts to adjudge the validity of an IRS levy on deposited property.

I would remand to the district court with instructions to hold an *Arnaiz* hearing to determine who is entitled to the deposited cash bail.

Therefore, I respectfully dissent.