UNITED STATES of America, Plaintiff,

v.

Harvey RUBENSTEIN, Defendant.

Bernard C. SHERMAN, Claimant–Appellant,

v.

CITY NATIONAL BANK, Cross–Claimant–Appellee.

Nos. 90–30277, 90–30265.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1991.

Decided July 24, 1992.

Brad Littlefield, Williams, Fredrickson, Stark, Weisensee & Goldsmith, Portland, Or., for claimant-appellant.

Michael J. Gentry, Tooze, Shenker, Holloway & Duden, Portland, Or., for claimant-appellee.

Before: TANG, O'SCANNLAIN, and RYMER, Circuit Judges.

TANG, Circuit Judge:

Dr. Bernard C. Sherman appeals from an order of the district court denying his motion for release of bail funds and granting City National Bank's motion to compel the Oregon district court clerk to comply with the bank's writ of garnishment. The district court concluded that ownership of the bail funds, which were advanced by Sherman to secure the release of criminal defendant Harvey Rubenstein, had passed from Sherman to Rubenstein. Accordingly, the district court held that Rubenstein's judgment creditor, City National Bank, was entitled to garnish bail funds remaining after Rubenstein paid restitution. Sherman challenges the district court's ruling that he conveyed ownership of the bail funds to Rubenstein. We vacate the judgment of the district court and remand.

## BACKGROUND

In 1985, Rubenstein was indicted for wire fraud in the District of Oregon. He was also indicted on similar charges in California. Following his arrest in August 1988, the district court in Oregon set bail at $25,000 on the California charges and $75,000 on the Oregon charges.

On September 13, 1988, the Oregon district court received a $75,000 cashier's check from Rubenstein's attorney, David Audet. The following week, the court received a second cashier's check from Audet

for $25,000.[1] On the same day, Rubenstein executed appearance bonds in the two cases, thereby securing his release. On the $75,000 bond, Rubenstein stated his net worth to be $75,000; on the $25,000 bond, $25,000. Neither appearance bond indicates a surety other than Rubenstein himself.

In January 1990, Rubenstein pleaded guilty to some of the pending charges. As part of his sentence, the district court required that $50,000 of the previously posted $100,000 in cash bonds be paid as restitution to three victims of Rubenstein's fraud. This appeal concerns the disposition of the remaining $50,000 in bail funds. We therefore recount the source of this money, and its disposition in the lower court.

The two cashier's checks totalling $100,000 were payable to the district court clerk. They were drawn on the United States National Bank of Oregon, where Audet's firm maintained its client trust fund account. Into this account Sherman had previously wired a total of $100,000 from his personal account in a Canadian bank. The wire transfers, one for $75,000 and one for $25,000, both indicate the client trust account of Audet's firm to be the beneficiary of the transfers. The transfers state their purpose to be "Refer: H. Rubenstein."

Sherman's subsequently-declared purpose for advancing these funds was that Rubenstein owed him a large sum of money, that Rubenstein might eventually repay some of this debt, and that Sherman "couldn't see any benefit, from [his] viewpoint, of having [Rubenstein] languish in jail." Because Rubenstein had defrauded Sherman previously, Sherman claims he was only willing to advance the funds upon receiving Audet's assurance that the money would be kept from Rubenstein, and that it would otherwise be protected. Audet and Sherman have both disclaimed any intent to give or loan Rubenstein the money deposited as bail.

The only written instructions regarding the advances appear in two letters written by Audet to Sherman at the latter's request. The letter of September 9, 1988 reads:

Dear Dr. Sherman:

I represent Mr. Rubenstein on pending federal charges in Portland, Oregon. His bail has been set at $75,000.00 U.S. cash. If you wire the $75,000.00 to my office's client trust fund account, it will be posted as bail. When the case is concluded we will return the money to you.

The letter of September 29, 1988; regarding the remaining $25,000, is substantially the same, concluding: "We will return the money to you when the case is concluded and the money is returned to us by the court."

City National Bank began its attempts to garnish Rubenstein's bail funds in October 1988 by filing in Multnomah County (Oregon) Circuit Court a judgment previously obtained against Rubenstein in California. The bank sought an order directing Rubenstein and the federal district court clerk to show cause why a writ of attachment should not issue against the bail funds.

On December 1, 1988, the Oregon state court issued the requested order to show cause. At about the same time, Rubenstein executed and filed with the district court clerk assignments purporting to transfer the deposited bail funds to Sherman. According to Audet and Sherman, the purpose of this assignment was to compensate for omitting Sherman's name as Rubenstein's surety at the time the bail funds were posted and generally to secure the deposited funds in Sherman's name. Audet testified the assignments were not intended to suggest that Rubenstein actually had an interest in the funds. Indeed, Rubenstein himself disclaimed ever having an interest in the bail funds.

Shortly after these assignments were executed, the United States removed the garnishment proceeding to federal court. On December 13, 1988, the district court remanded the action for lack of federal juris-

---

1. Receipts for both checks indicate the checks were received only from "Rieke, Geil & Sav-

age—David Audet, Attorney."

diction.[2] On remand, City National Bank prevailed in its efforts to obtain a writ of garnishment against the bail funds.

Rubenstein spent 1989 vacillating with regard to the federal criminal charges pending against him. In February he withdrew his not guilty plea and pleaded guilty. In June, he changed his plea again. In January 1990, he again pleaded guilty. Sometime during this period, Rubenstein learned that he might avoid a long prison sentence by making restitution to victims of his fraudulent schemes. Rubenstein then convinced Sherman in late 1989 to assign half of the deposited funds, $50,000, to the district court clerk solely for use in paying restitution on behalf of Rubenstein. Rubenstein also assigned to the district court clerk whatever interest he retained in the bail funds.

When Rubenstein was sentenced on March 23, 1990, he was ordered to pay restitution. To assure performance, the district court set aside $50,000 of the bail funds for distribution to Rubenstein's victims. The court then turned its attention to City National Bank's recently-filed motion to compel the district court clerk to comply with the bank's newly-obtained writ of garnishment. Because ownership of the remaining $50,000 in bail funds was unclear, the district court instructed the bank to apply to the state court "for [a] determination of who the balance of the bail money belongs to."

At this point, Sherman and City National Bank returned to state court, where Sherman filed a claim of exemption alleging that he, not Rubenstein, owned the bail funds. After a hearing, the state court denied Sherman's claim and confirmed the bank's writ of garnishment on the ground that Sherman had transferred ownership of the bail funds to Rubenstein. Despite this ruling, Sherman returned to federal court and filed a motion pursuant to 28 U.S.C. §§ 2041, 2042, and Fed.R.Crim.P. 46(f)

seeking release of the remaining $50,000 in bail funds.

In a July 12, 1990, decision considering both Sherman's motion and the motion of the bank to compel compliance with its writ of garnishment, the district court concluded that the Oregon state court was a proper forum in which to determine ownership of the funds and that the state court correctly concluded that Rubenstein, rather than Sherman, owned the bail funds. Sherman has timely appealed this decision of the district court. The district court's order denying Sherman's motion is an appealable collateral order. *See United States v. Badger,* 930 F.2d 754, 756 (9th Cir.1991).

## DISCUSSION

### I

■ This court has a special obligation to satisfy itself of the lower court's jurisdiction. *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). Subject matter jurisdiction is a question of law reviewed de novo. *Persons v. United States,* 925 F.2d 292, 294 (9th Cir.1991).

In *United States v. Arnaiz,* 842 F.2d 217 (9th Cir.1988), we held that district courts are empowered to consider motions and issue orders if they are "necessarily ancillary to the order exonerating [a] bond." *Id.* at 221. Thus, we held that jurisdiction existed to consider a criminal defendant's motion to require a bailbonder to return collateral posted with the bailbonder by the defendant. "That collateral stood in the same position as if it had been posted directly with the court; exoneration necessarily included release of the collateral, because the defendant's appearance obligation had been mooted by his surrender." *Id.* In finding jurisdiction, we relied on cases in which federal courts implicitly recognized the ability of third parties to seek release of bail funds which they posted on behalf of a criminal defendant. *Id.* at 221–22.[3]

---

**2.** The propriety of the remand order is not before us on this appeal.

**3.** *Arnaiz* impliedly rejects the holding of *United States v. Widen,* 38 F.2d 517 (N.D.Ill.1930). In

*Widen,* the district court held that it lacked jurisdiction to hear the motion of a third party, Mr. Greenberg, seeking the return of bail funds that he had allegedly posted on behalf of the

■ The parties do not dispute that Rubenstein satisfied the conditions of the bonds he signed. Release of bail funds was therefore required by Fed.R.Crim.P. 46(f). To release the funds, it was necessary to determine to whom they should be released. *See Arnaiz*, 842 F.2d at 222 ("the court's statutory duty of 'releas[ing] any bail' [cannot] be fulfilled without a determination of which party [is] entitled to receive it"). The district court thus had jurisdiction to consider Sherman's motion because it was "necessarily ancillary" to release of the bail funds. As we shall see, City National Bank's motion is not much different in nature than Sherman's. Therefore, jurisdiction also existed as to the bank's motion.[4]

## II

### A

■ In denying Sherman's claim of exemption and confirming City National Bank's writ of garnishment, the state court determined that Sherman transferred ownership of the bail funds to Rubenstein. It is uncertain, however, what role this determination played in the federal court's denial of Sherman's motion for release of the bail funds. For example, the district court reviewed the correctness of the state court's factual determination. Such review is inconsistent with the application of collateral estoppel. *See University of Ill. Found. v. Blonder–Tongue Lab., Inc.*, 465 F.2d 380, 381 (7th Cir.), *cert. denied*, 409 U.S. 1061, 93 S.Ct. 559, 34 L.Ed.2d 513 (1972).

■ Yet in sending the parties to state court, the federal trial court obviously foresaw a role for its counterpart in these proceedings. *Cf.* 28 U.S.C. § 636(b)(1) (providing for reference of matters by district courts to magistrate judges and for review of findings made on referral). We must therefore decide whether the state court finding can properly inform the federal court's decision. We conclude that it cannot.[5]

### B

■ Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them by the coordinate branches of government and duly invoked by litigants. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Tucker v. First Md. Sav. & Loan, Inc.*, 942 F.2d 1401, 1407 (9th Cir.1991). Thus, even when a concurrent

---

defendant. *Id.* at 518–19. The only possible basis on which to distinguish the present case from *Arnaiz* and the cases on which it relies is that here, as in *Widen*, the party seeking release of the bail funds "does not appear upon the court record". *Id.* at 518. We conclude this distinction lacks a difference, however. *See Bridges v. United States*, 588 F.2d 911, 912 (4th Cir.1978) (implicitly recognizing jurisdiction to hear petitions seeking return of bail funds in case where petitioners did not previously appear on the record).

**4.** The absence of a federal tax lien against the bail funds distinguishes the present case from *United States v. Badger.* In that case, we ruled on a "narrow jurisdictional issue" and held that under the Anti–Injunction Act the district court lacked power to settle a dispute as to who owned bail funds when one claim took the form of an IRS levy. 930 F.2d at 756–57.

**5.** We arrive at this conclusion on a ground other than the ability of a party to institute state court proceedings for the purpose of garnishing bail

funds held in the registry of a federal district court. Apart from the question of whether Rubenstein owned the funds, the parties do not now dispute the validity of City National Bank's writ of garnishment. As we recently observed, however, "funds in the registries of federal courts are not, as a general rule, subject to writs of attachment or garnishment." *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1062 (9th Cir.1991). Yet the *Van Cauwenberghe* court reserved the question whether a civil litigant could ever attach bail funds. *Id.* at 1064 n. 15; *cf. Landau v. Vallen*, 895 F.2d 888, 897 (2d Cir.1990) (holding that a federal district court hearing a civil case brought by victim of criminal defendant may attach bail funds held by same court). Although the question of the state court's jurisdiction arose when Sherman filed his claim of exemption, the concerns of the Multnomah County Circuit Court were allayed by the mandate of the federal district court. We decline to revisit sua sponte the issue of the state court's jurisdiction because we conclude that, in any event, the state court decision should not have informed the district court's ruling on Sherman's motion.

state proceeding might address issues relevant to a federal action, the rule is that the federal proceeding should go forward. Abstention is the exception. *Id.*

■■■ We view the district court's order directing Sherman and the bank to litigate bail ownership in the state court garnishment proceeding as a decision to abstain under *Colorado River*. When a federal court believes an issue is better addressed by a state court and certification is not available, abstention is the alternative. *See Lehman Bros. v. Schein*, 416 U.S. 386, 390, 94 S.Ct. 1741, 1743–44, 40 L.Ed.2d 215 (1974). As in *Colorado River*, this case presents no constitutional issue for decision. *See Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244–45. Furthermore, when a district court abstains under *Colorado River*, the correct course of action (and the one taken here) is to stay the federal proceeding rather than to dismiss it. *See Coopers & Lybrand v. Sun–Diamond Growers*, 912 F.2d 1135, 1138 (9th Cir.1990). The fact that the district court anticipated further federal proceedings, such as issuing an order releasing the contested bail funds, does not preclude characterizing the stay as an exercise of *Colorado River* abstention. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 11 n. 11, 103 S.Ct. 927, 934 n. 11, 74 L.Ed.2d 765 (1983) (recognizing that *Colorado River* abstention might not require litigation of entire lawsuit in state court and suggesting that degree to which litigation in federal court is foreclosed is instead relevant to issue of appealability of stay order). Accordingly, we review for an abuse of discretion the district court's decision to abstain under *Colorado River*. *See Tucker*, 942 F.2d at 1402.

### C

Several factors are relevant in deciding whether abstention under *Colorado River* is appropriate in a particular case. *See, e.g., id.* at 1408. Yet the decision whether to abstain "because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 16, 103 S.Ct. at 937. Significantly, "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Id.*

■■■ The district court gave no consideration to the *Colorado River* factors we think most important in this case. Chief among them is that the district court had previously assumed jurisdiction over the funds in question. *See Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246–47 ("court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts"). Funds deposited in the registry of a federal district court are *in custodia legis*. As such, the district court's control over the funds is virtually supreme. *See Van Cauwenberghe*, 934 F.2d at 1062; *Landau*, 895 F.2d at 893–94; *see also* 28 U.S.C. §§ 2041 (delivery of funds deposited with court to be made "under the direction of the court"), 2042 ("No money deposited under section 2041 of this title shall be withdrawn except by order of court."). *But see Badger*, 930 F.2d at 756–57 (holding that district courts lack jurisdiction "to decide competing claims to [a bail] bond" when one claim takes the form of a federal tax lien); *cf. Gannon v. American Airlines, Inc.*, 251 F.2d 476, 483 (10th Cir.1957) (state garnishment lien obtained before garnishee paid money into registry as part of interpleader action is entitled to full faith and credit when asserted against registry funds) (citing *Armour Fertilizer Works v. Sanders*, 63 F.2d 902, 903 (5th Cir.1933), *aff'd*, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206 (1934)), *vacated*, 251 F.2d 486 (10th Cir. 1958). *See generally* J.A. Connelly, Annotation, *Funds Deposited in Court as Subject of Garnishment*, 1 A.L.R.3d 936 (1965 & Supp.1991).[6]

---

6. We need not consider whether another court could exercise authority over federal registry funds. *Cf. Landau*, 895 F.2d at 897 & n. 6

(upholding in a civil case a federal district court's authority to attach bail funds held in registry of same court for the purpose of secur-

■ Although we have said that "money ... is not the sort of tangible physical property referred to in *Colorado River*," *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir.1990) (quotation omitted), registry funds are necessarily an exception to this pronouncement.

> The courts clearly have a deep interest in preserving the viability of the bail system in order to assure the attendance of criminal defendants at trial, and should be most reluctant to countenance interference with that system. Indeed, there is a civil liberties interest as well; when a third party comes to the aid of a defendant by posting bond on his behalf, the court has a duty to honor such trust.

*Badger*, 930 F.2d at 758 (O'Scannlain, J., dissenting).

■ We also think it important that the motion pending before the district court at the time it decided to abstain—*i.e.*, the bank's motion to compel compliance with the writ of garnishment—did not in fact implicate the writ of garnishment issued by the state court. Having chosen a state forum in which to obtain the writ, the bank should have followed that court's procedures in the event the clerk refused to comply with the writ. *See* Or.Rev.Stat. § 29.285 (1991) (concerning examination and punishment of a recalcitrant garnishee). With the possible exceptions of

granting permission to garnish and of hearing the case on removal, we see no role for the federal district court in the ordinary course of state garnishment proceedings.[7]

■ Rather than implicating the state garnishment proceeding, the motions of both City National Bank and Sherman invoked the separate power of the district court over funds in its registry.[8] There is nothing about the federal proceeding that necessitated a state court determination of ownership of the funds. Accordingly, we conclude the district court abused its discretion by staying its hand and returning the parties to state court to litigate Sherman's claim. Because the parties are entitled to adjudication of the issue in federal court without regard to the state garnishment proceeding, we remand to the district court for an independent determination of who owns the bail funds.

### III

Although the district court relied on the state court's findings to some extent, it also made its own findings of fact and conclusions of law. We will review these here to guide the district court on remand.

■ Contrary to dicta appearing in *United States v. Widen*, 38 F.2d 517, 519 (N.D.Ill.1930), courts should not presume that money posted as bail is the defen-

---

ing recovery for defendant's alleged victim). The proper method for doing so, however, would be first to request the permission of the court in whose registry the funds have been deposited. *See Van Cauwenberghe*, 934 F.2d at 1062 ("funds deposited in the registries of federal courts may not be attached 'except by the order of the judge or judges of said courts' ") (quoting *The Lottawanna*, 87 U.S. (20 Wall.) 201, 225, 22 L.Ed. 259 (1873)); *id.* at 1064 ("attachment of property in *custodia legis* is permissible under California law with the consent of the holding court") (footnote omitted); *Landau*, 895 F.2d at 896 ("attachment of funds in the registry is permissible with leave of the supervising court"); 6 Am.Jur.2d *Attachment & Garnishment* § 202 (1963). No such permission was sought in this case prior to issuance of the writ of garnishment.

**7.** We note that the bank did not seek federal enforcement under 28 U.S.C. § 1738 of either the Oregon writ of garnishment or the California judgment.

**8.** To the extent that the State of Oregon's interest in its writ of garnishment remains a consideration, the interest here is not in enforcing a judgment of an Oregon court. *Cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13, 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1 (1987). Rather, in this case, the state's interest is in giving full faith and credit to the judgment of a California court and in promoting the relationship between states contemplated in Article IV, Section One of the Constitution. Because we do not foreclose the possibility of a state court garnishing federal registry funds, our decision does not affect these interests. Under the circumstances of this case, however, these interests do not weigh in favor of abstention. The power of federal courts over their registries must prevail unless specific accommodations have been made for another court to exercise jurisdiction over registry assets.

dant's. *United States v. Jones,* 607 F.2d 687, 688 (5th Cir.1979); *United States v. Parr,* 594 F.2d 440, 443 (5th Cir.1979); *United States v. Bursey,* 515 F.2d 1228, 1235 (5th Cir.1975); *Neely v. United States,* 357 F.Supp. 713, 717 (S.D.Fla.1973). If a presumption is necessary, then the receipt issued by the clerk is a good starting point.

In the present case, there is no dispute that Sherman was the source of Rubenstein's bail. The question, then, is whether Rubenstein acquired ownership of the funds. Unless a transfer of ownership occurred, the $50,000 in question should be released to Sherman and City National Bank's motion to enforce its writ of garnishment should be denied.[9]

We have found only three federal cases that consider whether ownership of monies posted as bail in a federal criminal proceeding transferred from a third party to the defendant.[10] In *United States v. Parr,* Clinton Manges posted $75,000 with the district court clerk as bail for the defendant Parr. 594 F.2d at 441. The clerk noted that, upon disposition of the case, the funds should revert to Manges. *Id.* After Parr failed to appear, bail was forfeited and $35,000 was remitted to Manges. *Id.* at 441–42. On appeal, Parr challenged the decision to remit the funds to Manges. *Id.* at 442. Ultimately, the Fifth Circuit looked at the "intention of all concerned" and concluded that "title to the funds deposited by Manges did not pass to Parr." *Id.* at 443.

In *Jacobson v. Hahn,* 88 F.2d 433 (2d Cir.1937), plaintiff brought an action to cancel notices of lien and levy placed by a tax collector on "Liberty loan bonds" posted as bail on behalf of the defendant Flegenheimer. *Id.* at 434. "The question presented was whether the Liberty bonds

so deposited were the property of Flegenheimer and so subject to distraint by the collector for unpaid income taxes." *Id.* The evidence showed that each of the three persons who contributed money to purchase the bonds received assurances that their money would be returned to them. In particular, one of the contributing individuals, Schneck, was given a receipt indicating the money was received for the purpose of securing bail for Flegenheimer, and upon discharge of the bail the money would be returned to Schneck. *Id.* In view of this evidence, the Second Circuit reversed the district court, concluding that "[p]laintiff rightfully can recover because of absence of proof of ownership in Flegenheimer." *Id.* at 435.

Finally, in *Neely v. United States,* 357 F.Supp. 713 (S.D.Fla.1973), the plaintiff brought an action for wrongful levy seeking to recover funds which he had posted as bail for the defendant, Sanzone, and on which the IRS had levied. The evidence showed that Neely originally owned the bail funds and that Neely had given the money to his attorney, Birnbaum, with instructions that the funds be used to post Sanzone's appearance bond. *Id.* at 715. "The evidence [was] uncontroverted that the [funds were] never delivered to Sanzone or to counsel for Sanzone and that the monies remained in Birnbaum's possession until Birnbaum deposited the [funds] with the Magistrate." *Id.* When the money was deposited, "[n]o representations were made … that the money was the property of plaintiff or that the money was the property of anyone other than Sanzone." *Id.* At trial, Neely testified that at no time did he intend to make a gift or loan of the funds to Sanzone. *Id.* at 716.

---

**9.** Because the issue in this case concerns ownership of the funds, the parties' references to secured and unsecured interests in the bail monies are irrelevant. Sherman makes no argument that, even if he lost title to the funds, his remaining interest in the funds was superior to the bank's.

**10.** A fourth federal case, *Midland Ins. Co. v. Friedgood,* 577 F.Supp. 1407 (S.D.N.Y.1984), conducts a thorough analysis of ownership of

funds provided by a third party to an insurance company as collateral for a bond posted in a state criminal proceeding. *See also Midland Ins. Co. v. Friedgood,* 649 F.Supp. 239, 241 (S.D.N.Y.1986) (indicating criminal proceeding to have occurred in state court); *United States v. Arnaiz,* 842 F.2d 217, 221 (9th Cir.1988) ("collateral [posted with bondsman] stood in the same position as if it had been posted directly with the court").

The *Neely* court concluded that Neely had intended neither a gift nor a loan in posting Sanzone's bail. *Id.* at 716, 717–18. The court noted that Neely's attorney "sought a receipt for the monies so that upon the satisfaction of the bond the fund would be returned to Birnbaum as agent for plaintiff." *Id.* at 718. Thus, the government was ordered to return to Neely the monies on which it had levied. *Id.*

In the present case, the district court relied on five facts to find that Rubenstein acquired ownership in the bail funds advanced by Sherman: (1) Sherman wired the cash "to defendant solely with the instruction remittance to 'H. Rubenstein'"; (2) Rubenstein "acted as his own surety when he signed the cash appearance bonds"; (3) Rubenstein "made no disclosure that the bail monies were not his as required by Fed.R.Crim.P. 46"; (4) Rubenstein "represented to the court that his net worth totalled $100,000, the amount of the bail money deposited"; and (5) defendant purported to assign the bail money to Sherman at the time City National Bank filed its writ of garnishment.

These purported facts are mostly flawed or irrelevant. First, when Sherman wired the funds, he sent them not to Rubenstein himself, but to the client trust fund account for the law firm of Rubenstein's attorney. Rubenstein never had access to the funds. Significantly, Rubenstein's name appears on the wire transfers not under the "Beneficiary" heading but under the heading of "Purpose of Remittance." Moreover, contrary to the finding of the district court, Sherman did convey instructions to Attorney Audet concerning use of the funds. These instructions were oral and were memorialized at Sherman's request in the letters Audet sent to Sherman.

Second, to state that Rubenstein "acted as his own surety" begs the question of ownership of the bail funds. Furthermore, it is incongruous to say that Rubenstein acted as a surety when the bonds were indicated to be "non-surety."

▆ Third, failure to disclose the source of bail funds has not previously been found fatal to a claim for release of such funds. *See Neely,* 357 F.Supp. at 717 (failure to identify source of funds did not necessitate a finding that third party loaned funds to defendant); *cf. Bridges,* 588 F.2d at 912 (providing for hearing on ownership of funds in case where petitioners did not previously appear on the record). Federal Rule of Criminal Procedure 46 does not specifically require identification of the source of bail funds. Identification is generally unnecessary when the entire amount of bail is posted. Furthermore, in this case neither the district court nor the U.S. Attorney sought to identify the source of the funds, as they might have pursuant to *United States v. Nebbia,* 357 F.2d 303 (2d Cir.1966).

Fourth, Rubenstein did not claim outright that his net worth was $100,000. Instead, he indicated his net worth on the $75,000 bond to be $75,000; on the $25,000 bond, $25,000. Because these statements of net worth were made on the same day, they are almost certainly inconsistent. Beyond indicating that Rubenstein did not understand the forms he was filling out, these statements are meaningless.

▆ Finally, we agree with the district court that Rubenstein's purported assignment of the bail funds to Sherman lends support to the finding that Sherman had initially conveyed title in the bail funds to Rubenstein.[11] However, reliance on this evidence alone would not justify a finding for the bank, in view of substantial evidence to the contrary.

▆ For example, there is direct evidence concerning Sherman's intent in advancing the funds.[12] The testimony of Sherman and Audet is strong evidence of the "intention of all concerned." *Parr,* 594 F.2d at 443. Thus, their testimony should

---

**11.** Even so, Audet explained that the assignment was included solely to protect Sherman by making clear that Rubenstein had no claim to the funds. Furthermore, although Sherman's 1989 assignment of half of the bail funds to the district court clerk is consistent with the purported reassignment of the bail funds by Rubenstein to Sherman, it is equally consistent with the conclusion that Sherman had retained title to the funds all along.

**12.** Contrary to the assertions of City National Bank, Sherman's intent in transferring the funds is most important. The bank's reference

not be disregarded in favor of circumstantial evidence without a finding as to the credibility of these witnesses. *Cf. Jacobson,* 88 F.2d at 435 ("suspicion and conjecture" should not displace "positive testimony of all the witnesses" as to ownership of bail funds). The testimony of these individuals indicates that Sherman did not intend a gift or a loan to Rubenstein. Indeed, Sherman requested and received the very same assurance that was determinative in *Jacobson:* a receipt setting forth the purpose of the advanced funds and a promise that the funds would be returned upon discharge of the bail. *Cf. id.* at 434.

As this case now stands, it appears virtually on all fours with *Neely.* Indeed, the present case may be stronger, given the memorialization of Sherman's instructions to Audet. The one distinction between the two cases is that, in the present case, Sherman delivered the funds to Rubenstein's attorney. *Cf.* 357 F.Supp. at 715 (funds never delivered to counsel for Sanzone). Yet other evidence indicates Rubenstein's attorney might be viewed as Sherman's agent for the purpose of posting Rubenstein's bail.[13]

### CONCLUSION

The parties should not have been returned to state court to litigate the question of the bail funds' ownership. In preparation for an independent determination of ownership by the district court, we have reviewed the relevant law and evidence developed thus far. We now remand for further proceedings consistent with this opinion.

**VACATED and REMANDED.**

---

to its own objective, good faith belief as to who owned the bail funds is irrelevant in the present context. The facts do not disclose that the bank took possession of the garnished funds, with or without knowledge of Sherman's claim.

13. Consistent with the view that Audet served as Sherman's agent with regard to the bail funds is the fact that the receipt for the money issued by the district court clerk to Audet was in Audet's name alone, "so that upon the satisfaction of the

bond the fund would be returned to [Audet] as agent for [Sherman]." *Neely,* 357 F.Supp. at 718. On the other hand, in arranging for the wire transfers from Sherman, Audet apparently assumed that he was representing only Rubenstein; Audet never sent Sherman a bill. Nevertheless, the nature of the relationship did give Sherman cause to suggest later that Audet had assumed the limited role of protecting Sherman's interest in the advanced funds.